ANN ISABEL SMITH, by Frank S. Kelley, her next friend,

*v.*

HARRY H. POND et al.

[Submitted June 17th, 1919.   Decided July 15th, 1919.]

1. A gift to be effective in perpetuity must be charitable exclusively.

2. Where a gift is to the trustees of a church, the income therefrom to be used "for support of the church or such benevolent purposes as the trustees of said church shall direct," the power to use the fund for "such benevolent purposes as the trustees shall direct" embraces objects not charitable, and brings the gift within the rule against perpetuities.

On bill, &c.

*Messrs. Lum, Tamblyn & Colyer,* for the complainant.

*Mr. Herbert C. Bartlett,* for the executors.

*Mr. William Elmer Brown,* for the defendant the First Methodist Episcopal Church of Vineland.

*Mr. Thomas F. McCran, pro se,* for the attorney-general.

BACKES, V. C.

The question propounded is, Does the following bequest create a valid perpetual trust for public charity?

"Twenty-second.   I order and direct my executors to sell at either public or private sale my home property now occupied by me and situate on the north side of Landis avenue between East and Valley avenues, Vineland, New Jersey, consisting of buildings and five acres of land, and I do hereby give and bequeath to the trustees of the First Methodist Episcopal Church of Vineland, New Jersey, the amount of the net proceeds of said sale of my home.   The said church trustees to hold the amount received in trust nevertheless as an endowment fund.   Said endowment fund to be safely invested and the net income arising therefrom shall be used for support of the church *or such benevolent purposes as the trustees of said church shall direct.*"

The italics are used to emphasize the point upon which the discussion hinges. The bequest is contained in the twenty-second clause of the will of Anne Beaumont, deceased. The executors have sold the land. The bill is filed by the residuary legatee, a lunatic, by her next friend, thereunto duly authorized, for a construction of the bequest, and a declaration that it is void for uncertainty and in violation of the rule against perpetuities and a decree that the executors hold the legacy as a part of the residuary estate.

As I read the paragraph of the will, the trustees were given discretionary power to do either one of two things, to devote the entire income of the fund to the support of the church or wholly to such benevolent purposes as they might select; or, perhaps, they may allot it between the two sets of objects. To which of the two sets of objects the testatrix intended the income to go, or if to both how much to either, is left in uncertainty. The trust to the use of the church is charitable and not within the rule against perpetuities, but the alternative use to "such benevolent purposes as the trustees shall direct" embraces objects that are not charitable and is within the rule. A gift to objects charitable in their nature, or to charity generally, to be appointed at the discretion of the trustees, is sufficiently certain and will be enforced in equity. Equity will compel the trustees to exercise their discretion, or, upon their failure to act, equity itself will administer the trust, supplying the trustee and defining the objects, and, when necessary, will administer it according to the doctrine of *cy pres*. But a gift to be effective in perpetuity must be to charity exclusively and must be so indicated by the donor, although the selection of the objects of the charity may be delegated to the discretion of the trustees. If the trust be to uses charitable or to uses not charitable, in the discretion of the trustee, promiscuously and unapportioned, it will fail for want of certainty. Equity is powerless to compel the trustee to exercise his discretion favorably to the lawful use as against the direction of the donor that he may exercise it in favor of a use not countenanced by law, and equity itself is equally powerless to apply the trust to the lawful use in the face of the donor's intention that it may be applied to one not law-

ful. A trust to such mixed uses is void. This is the established doctrine, and I am bound by authority to apply it to the bequest in hand and to declare the trust invalid.

In *Norris* v. *Thomson's Executors*, *19 N. J. Eq. 307; affirmed, 20 N. J. Eq. 489*, the testator empowered his wife by her last will and testament to give and devise a certain portion of his estate "among such benevolent, religious or charitable institutions as she may think proper." The bequest was held to be void because it was vague and indefinite, and was not sustainable as a gift to charity because it was to *"benevolent,* religious or charitable institutions," benevolence having a wider meaning than charity in its legal signification.

In *De Camp* v. *Dobbins, 31 N. J. Eq. 671,* the gift was to the North Reformed Church of Newark, in trust, to use the fund to "promote the religious interests of the church and to aid the missionary, educational and benevolent enterprises to which said church is in the habit of contributing." The church had been in the habit of contributing to certain enterprises which were charities. The gift was upheld in an opinion delivered by Chief-Justice Beasley, who also spoke for the court of errors and appeals in *Thomson's Executors* v. *Norris,* in which he pointed out the distinguishing features of the two cases. He said: "It is urged that this entire trust cannot be said to be charitable, within the legal signification of that term, inasmuch as the word 'benevolent,' by its natural force, takes in objects and purposes that are not charities. That this term has this latitudinarian meaning was, upon full consideration, decided by this court in the case of *Norris* v. *Thomson's Executors, 5 C. E. Gr. 489.* That exposition went on the ground of the intrinsic meaning, and the unchecked form, of the term, for on that occasion it was considered that there was nothing present tending to hem in or narrow its import. As the word 'benevolent' is admittedly broader in its meaning than the word 'charitable' in its technical sense, I am unable to comprehend how the decision in question could have been other than it is, unless upon the inadmissible assumption that, when there is no guide to the testator's intention but his language, the court is possessed of the arbitrary power of altering such language. It will be found,

1 think, in almost all the decisions that when these expressions have been taken in any sense but the technical or popular sense, respectively, there has been something in the context justifying the particular interpretation." * * * "In this will the words in question do not depend on their intrinsic qualities alone for their signification. The facts shown clearly demonstrate the sense in which the testatrix used these terms. It does not seem to me that the matter has been left in the least uncertainty. It appears in the case by the proofs that this church has been in the habit of making donations to certain enterprises and objects, such as the foreign and domestic missions, the Bible society, &c., all of which enterprises are charities in the legal sense of the term. When, therefore, this will declares the trust, and directs the property to be used, 'to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing,' the will itself provides a standard by which the word 'benevolent' is to be measured. The fund is not to be used to aid any benevolent enterprise, but only benevolent enterprises of a certain defined character, and they are charities. The word 'benevolent' is thus, by the context and the subject-matter, cut down into legal dimensions."

In *Hyde's Executors* v. *Hyde, 64 N. J. Eq. 6*, the gift was to executors in trust "for such religious, charitable or educational or other purposes as they may deem advisable." The gift was declared to be void because of the addition of the words "or other purposes." Chancellor Magee remarking that "the clause, looked at by itself, clearly expresses the intent to permit the trustee to devote the fund, if they chose to do so, to purposes other than those which are educational or religious or charitable."

In *Hegeman's Executors* v. *Roome, 70 N. J. Eq. 562*, the gift was to the testatrix's husband "for the purpose of making such distribution among religious, benevolent or charitable objects as he may select." In declaring the trust ineffective Vice-Chancellor Bergen said: "A bequest to benevolent, religious or charitable institutions without qualification has been so often held to be void by the courts of this state as to place the question

beyond successful argument. Citing the cases from which I have quoted."

In *Van Syckel* v. *Johnson, 80 N. J. Eq. 117,* the fund was to executors in trust to use the income for the care of graves (not a charity) and for the payment of any deficiency in the salary of the pastor of a named church (a charity). Vice-Chancellor Walker (now chancellor) held that, because there was a mixing of charitable uses with objects not charitable the bequest was void.

There is nothing in the will other than what is contained in the twenty-second clause above quoted to indicate the intention of the testatrix. With an earnest desire to sustain the gift I have carefully searched the context of the clause for something to limit the word "benevolent" to a purpose strictly charitable, but without success. Counsel point out as significant of the charitable intentions of the testatrix that the gift was to the church *eo nomine* that the "church trustees" were to hold the fund, and that it was to be held as an "endowment fund;" and I have considered these incidents in connection with the third section of the Religious Society act (*Comp. Stat. p. 4308*), which enables church trustees to receive and hold legacies for the use of the congregation, but they do not impress me as of importance, in view of the discretion given to the trustees to use the income for benevolent purposes. They are, of themselves, too feeble, it seems to me, to restrict the broad meaning of benevolence; and, as for the statute, the limited power thereby vested in church trustees cannot be read into the will to circumscribe and limit the uses otherwise declared by the testatrix. And further, I cannot allow that the testatrix intended the fund as an endowment of the church—and in this, such charitable benevolences as the church, under its regulations, is called upon to support—for, had that been her aim, the primary bequest to the church, without more, would have accomplished her purpose. To give such a construction to the clause would be to entirely ignore the bequest upon trust with the uses declared to the support of the church *or* to benevolences, as the trustees may decide, which, of course, is inadmissible.

29

Testimony was admitted to show that the church, under its discipline, contributes regularly to home and foreign missions and other worthy causes that are legal charities; that they are known in the church literature as benevolences; that the testatrix was a devout member of the church and familiar with its rules and herself was a liberal contributor to them. These facts, it is contended, show the sense in which the executrix used the terms benevolent and fix with certainty the objects of her bounty and bring the case within the doctrine of *De Camp* v. *Dobbins.* In that case the testatrix nominated the objects of her benevolence, and, upon the evidence being let in to identify them, they were found to be charities. "The will itself," said the chief-justice, "provides a standard by which the word 'benevolent' is to be measured." In the present case there is no guide to the intention of the testatrix except the word "benevolent." Now, if we assume that the facts brought out were all within the knowledge of the testatrix, where is there anything in the will to show that she intended to confine "benevolent" to those charitable benevolences to which she and the church were accustomed to contribute? The intention of the testatrix must be found in the will. It cannot be established *aliunde.*

Counsel further contend that the gift should be upheld as a charity because the delegation of power to the trustees to designate the objects was in the alternative; that the use of the disjunctive "or" permits them to ignore the gift to benevolent purposes and enables them to perform the trust consistently with the law by using the entire income for the support of the church. I fail to see any force in the argument. It seems to me to be utterly immaterial whether the disjunctive "or" or the copulative "and" was used, as it was in *Van Syckel* v. *Johnson, supra,* which case counsel endeavor to distinguish. The determination of whether the gift is a valid charity depends upon the intention of the testatrix, as expressed in the will, and if it is not found there, the contrivances of the trustees cannot supply the deficiency. I am referred for authority to the text in *11 Corpus Juris 330,* where, after stating the principle, that a gift fails as a charity where purposes charitable are mingled with those not charitable, it is said that a

"class of cases exists where there is a general overriding trust for charitable purposes, but some of the particular purposes to which the fund may be applied are not strictly charitable, or one of two alternative modes of application is invalid in law. In such cases the court will give effect to the general charitable trust, but the trustees are restricted from applying the fund to the purposes or in the manner which is objectionable."

The text is supported by the authorities cited. Judge Gray, in *Jackson v. Phillips, 96 Mass. 539* (on *p. 556*), expresses it in this manner: "When a charitable intent appears on the face of the will, but the terms used are broad enough to allow of the fund being applied either in a lawful or unlawful manner, the gift will be supported, and its application restrained within the bounds of the law," and he quotes from and cites leading English cases that illustrate this secondary rule of interpretation. A cursory reading of the authorities found in the foot-notes to *Corpus Juris* and in Judge Gray's opinion will readily disclose the inapplicability of the rule to the will under consideration. If we keep in mind that the trust and not the gift is in the church—that is, that the gift was not to the church as a charity that the bequest is not complete, and that the testatrix confided to the trustees to supplement her will, by writing into it the objects of the gift, charitable or non-charitable, in their discretion, we experience no difficulty in reaching the conclusion that a charitable intent as to the whole fund does not appear on the face of the will. If the gift had been to the church to be devoted to its charities and benevolences, of which some might not be charities, we would have a familiar example of a general overriding trust for charitable purposes. For other illustrations see the cases in the foot-notes to *Corpus Juris*.

The result that I have reached, upon principle and authority, is not to my satisfaction, for I am of the impression that the testatrix understood benevolent to be synonymous with charitable, and it is regrettable that her wishes should be frustrated by the inadvertent use of an inept term. However, it is the court's duty to construe wills, not to make them.

The complainant is entitled to a decree according to the prayer of her bill.